UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**WESLEE ALLEN MUCKENFUSS**                                                **PLAINTIFF**

v.                                    5:16-CV-00023-JTR

**SCOTTY ARRINGTON, Deputy Jailer,** *et al*.                **DEFENDANTS**

## OPINION AND ORDER

### I. Introduction

On January 25, 2016, Plaintiff Weslee Allen Muckenfuss ("Muckenfuss") filed this *pro se* § 1983 action alleging that, while he was a pretrial detainee in the Drew County Detention Center ("DCDC"), he was denied constitutionally adequate medical care. *Doc. 2.* Muckenfuss filed three Amended Complaints. *Docs. 11, 51 & 66*.

After the initial screening required by 28 U.S.C. § 1915A(a) and subsequent preliminary rulings, Muckenfuss was permitted to proceed with his § 1983 claims against Scotty Arrington ("Arrington"), Daniel Durham ("Durham"), Chris Nunn ("Nunn"), Barbara Parnell ("Parnell"), Susan Potts ("Potts"), Alma Vincent ("Vincent"), Veronica Watson ("Watson"), (collectively "Defendants"), all

1

employees of the DCDC.[1] All are sued in their individual capacities. Muckenfuss claims that the Defendants, other than Potts, unnecessarily delayed providing him with adequate medical care for injuries he allegedly sustained during an attack in his cell. His injuries included a broken nose, broken ribs, and a collapsed lung. He also asserts a failure-to-train claim against Potts, the jail administrator. Muckenfuss seeks $300,000 in damages.

Defendants have filed a Motion for Summary Judgment, a Brief in Support, a Statement of Undisputed Facts, and a Reply. *Docs. 113-115; 118.* Muckenfuss has filed a Brief in opposition. *Doc. 117.*

Before addressing the merits of Defendants' Motion, the Court will summarize the relevant undisputed facts giving rise to Muckenfuss's claims.[2]

1. On October 26, 2014, at 11:00 p.m., Muckenfuss, a pretrial detainee,[3]

---

[1] On July 15, 2016, the parties consented to proceed before a United States Magistrate Judge. *Doc. 57.*

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

[3] It appears Muckenfuss was a pre-trial detainee at the time his inadequate medical care claim arose. Currently, the Eighth Circuit applies the same deliberate indifference standard to an inadequate medical care brought by a pretrial detainee, under the Fourteenth Amendment, or a convicted prisoner, under the Eighth Amendment. *See Vaughn v. Greene County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006). In *Ingram v. Cole Cnty*, 846 F.3d 282 (8th Cir. 2017), the Eighth Circuit recently heard arguments, *en banc*, as to whether the deliberate indifference standard still applies

was injured while confined in a two-person cell.[4]   (*Doc. 53*).

2.   At approximately 1:00 a.m., two hours after Muckenfuss was injured, jailers removed him from his cell and took him to the inmate visitation area for observation. Jail staff provided Muckenfuss with first aid, including an ice pack and ibuprofen. (*Doc. 53 at p. 2*; *Doc. 114-3 at p. 4*;  *Doc. 114-6* at ¶ 19-20;  *Doc. 114-3 at pp. 3-5*).

3.   Muckenfuss's visible injuries included a bloody nose, a swollen face, and bleeding from his left ear.   Muckenfuss complained to jail staff that he thought something was broken next to his nose, that his ribs were broken, and that he was having "a hard time breathing."   (*Doc. 53 at p. 1)*.

4.   In response to Muckenfuss's complaints, jail staff called Administrator Potts and an ambulance.   (*Doc. 114-3 at pp. 5-6;   Doc. 114-6* at ¶ 11-12).

5.   At approximately 2:57 a.m., Muckenfuss was examined by EMT's,

---

to pretrial detainees in the light of the Supreme Court's holding in *Kingsley v. Hendrickson,* 135 S.Ct. 2466 (2015). However, as of the date of this Recommendation, no opinion has been entered in the *Ingram* case.

[4]   The Court assumes, for purposes of the present motion, that Muckenfuss's cellmate beat him up.  Muckenfuss gave conflicting stories about how he was injured.  He told jail staff that he fell from his bunk.   It was not until he arrived at the hospital that he reported that his cellmate beat him up.  Accordingly, as Defendants point out, it is unclear *how* Muckenfuss actually was injured. The cause for Muckenfuss's injuries is not relevant to the narrow question before the Court:   Did Muckenfuss received constitutionally adequate medical care for his injuries, regardless of the circumstances that led to those injuries?
  It also is unnecessary to address Muckenfuss's continuing references being left "unprotected" from his cellmate, who allegedly beat him up.  Muckenfuss's failure to protect claim was dismissed at the initial screening stage.  (*Docs. 14 and 20*).   Thus, no failure to protect claim is before the Court.

who instructed jail staff to keep a "close watch" on Muckenfuss. However, they did not take Muckenfuss to the hospital.[5] (*Doc. 114-3 at p. 5*; *Doc. 117 at p. 2*).

6. Through the rest of the evening and into the next day, Muckenfuss's nose continued to bleed, and he continued to complain to jail officials about his injuries. (*Doc. 117 at p. 3*).

7. At approximately 12:45 p.m. on October 27, 2014, jail officials took Muckenfuss to the Mainline Medical Clinic for a medical appointment that Potts had scheduled for him. Muckenfuss was examined and x-rays were taken. The nurse practitioner who initially examined the x-rays advised that she could not see "anything wrong" but would have someone else examine the x-rays. She permitted Muckenfuss to return to the DCDC. (*Doc. 114-4 at p. 4*; *Doc. 114-6 at ¶¶ 13-14*).

8. At approximately 3:05 p..m., Muckenfuss returned to the DCDC from his appointment at the Mainline Medical Clinic. (*Doc. 114-4 at p. 4*).

9. At approximately 5:45 p.m., jail officials received a telephone call from the Mainline Medical Clinic advising that further review of Muckenfuss's x-rays showed "something ruptured" and he needed to be taken to the hospital. At approximately 7:05 p.m., after arranging for transportation, jail officials took

---

[5] Muckenfuss contends that Officer Arrington "sent the paramedics away" which prevented them from transporting him to the hospital and delayed his receipt of medical treatment for his injuries. (*Doc. 117 at p. 2*). Defendants dispute this. Since Muckenfuss has failed to present any evidence that the alleged delay in treatment impacted his condition or recovery, it is not necessary to resolve this factual dispute.

4

Muckenfuss to the Drew County Memorial Hospital, where he received further treatment for his injuries, including a surgical procedure to repair a collapsed lung. (*Doc. 114-6 at ¶¶ 15-17; Doc. 117 at p. 2; Doc. 114-5 at pp. 1-2*).

10. Following his surgery, Muckenfuss was transferred to Pine Bluff Jefferson Hospital, where he stayed three days before being released. (*Doc. 117 at p. 3*).

## II. Discussion

Defendants argue that they are entitled to summary judgment on all claims Muckenfuss has asserted against them. The Court agrees.

To proceed to trial on his inadequate medical care claims, Muckenfuss must have evidence demonstrating that: (1) he had an objectively serious need for medical care to treat his injuries; and (2) one or more of the Defendants subjectively knew of, but deliberately disregarded, that serious medical need by delaying his medical treatment. *See Saylor v. Nebraska,* 812 F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010). Deliberate indifference, which goes well beyond negligence or gross negligence, "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

Additionally, because Muckenfuss's inadequate medical care claims are all rooted in the contention that Defendants, none of whom are medical care providers, delayed him receiving the medical treatment he needed, Muckenfuss must provide evidence to demonstrate he was harmed by the alleged delay in treatment. *Jackson v. Riebold*, 815 F.3d 1114, 1120-21 (8th Cir. 2016); *Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006) (explaining that, to avoid summary judgment on a delay in medical care claim, an inmate must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment); *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (same). Thus, Muckenfuss must show Defendants were aware of but ignored a critical or escalating medical situation, or that the delay adversely affected the inmate's prognosis.

Muckenfuss has failed to produce *any evidence* demonstrating that any Defendant was deliberately indifferent to his need for medical treatment. To the contrary, it is undisputed that: (1) within two hours of being injured, jail officials removed Muckenfuss from his cell and placed him in inmate visitation for observation; (2) jail officials offered him first aid, including ice and ibuprofen; (3) jail officials notified Administrator Potts and called for an ambulance and EMT personnel to examine Muckenfuss; (4) approximately four hours after he was injured, Muckenfuss was examined by EMT's; (5) after that initial examination, Administrator Potts made a doctor's appointment for Muckenfuss; (6) at 12:45

p.m. on October 27th, approximately 14 hours after he was injured, Muckenfuss was taken to a medical clinic where he was examined and x-rays were taken;  (7)  the nurse practitioner at the medical clinic, who examined Muckenfuss and preliminarily reviewed his x-rays, made the preliminary decision to return him to the DCDC;  (8) at approximately 5:45 p.m., jail officials were notified that upon further review of the x-rays, a physician had determined that Muckenfuss needed to be taken to the Drew County Memorial Hospital for internal injuries;  and (6) at approximately 7:07 p.m. jail officials transported Muckenfuss to the hospital, where he underwent a successful surgical procedure to repair a collapsed lung.

Thus, the undisputed evidence shows that jail officials took *prompt action* to ensure that Muckenfuss received medical attention.  While Muckenfuss subjectively believes that Defendants did not act promptly enough, this is *not* sufficient to create a material factual dispute for trial.  Based on the undisputed facts, there simply is no evidence to permit a jury to find that any Defendant was deliberately indifferent to a known medical need or that they caused a delay in treatment which adversely affected Muckenfuss's recovery.

Muckenfuss's collapsed lung, the cause of his breathing difficulties, could not have been discovered by jail staff *without assistance from medical professionals*. In fact, the nurse practitioner who examined Muckenfuss at the medical clinic and reviewed his x-rays did *not* detect that he had a collapsed lung.  Instead, she

7

determined, in her professional medical judgment, that it was appropriate for Muckenfuss to return to the DCDC. Thus, the seriousness of Muckenfuss's medical condition was not known to Defendants until approximately 5:45 p.m. on October 27, 2014, when they received a phone call from the Mainline Medical Clinic advising that a physician had determined that Muckenfuss needed to go to the hospital. Within one and one-half hours of learning about Muckenfuss's need for further medical attention, Muckenfuss was on his way to the hospital. While Muckenfuss complains about not being taken to the hospital sooner, he does not contend that the brief delay in treatment adversely affected his prognosis. Nor is there any evidence in the record to support such a contention.

Muckenfuss refers to missing surveillance video or audio, which he says would have provided evidence that he "had a serious medical need." He faults Potts for losing such evidence and for failing to take pictures of his injuries. *Doc. 117 at p. 4*. No one disputes that Muckenfuss had a "serious medical need." The issue is whether any of the Defendants were *aware* of that need and then deliberately disregarded it. Muckenfuss fails to explain how a video or pictures would have revealed his internal injuries, which were not visible to the naked eye. Nor does he explain how surveillance video or audio, if available, would assist him in proving his claims of deliberate indifference and failure to train. Thus, he has not offered any evidence that he was prejudiced by the alleged failure to preserve surveillance

video or audio. Finally, there is no evidence that Defendants acted in bad faith in failing to preserve such evidence. *See*, *e.g*., *Hallmark Cards v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013) (to support a spoliation instruction, court must find that: (1) the destroying party acted in bad faith in failing to preserve evidence; and (2) the opposing party was prejudiced by the failure); *Sherman v. Rinchem Co.*, 687 F.3d 996, 1006-07 (8th Cir. 2012) (emphasizing that, under federal law, spoliation cannot be based on a negligent failure to preserve evidence). Thus, spoliation is not an issue in this case.

Even giving Muckenfuss the benefit of all doubt, *at best*, his allegations only support a claim that jail officials were arguably negligent in not getting him medical treatment sooner. Claims of negligence fail to satisfy the higher deliberate indifference standard required to find a constitutional violation. *See Williams v. Kelso*, 201 F.3d 1060, 1065 (8th Cir. 2000) ("At best, plaintiff's proof in this appeal amounts to negligent conduct, not deliberate or willful conduct on [the jailors'] part."); *Olson v. Bloomberg*, 339 F.3d 730 (8th Cir. 2003) ("deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct.").

Muckenfuss's remaining claim against Potts, for failing to adequately train jail officials to respond to his medical needs, also fails as a matter of law. A plaintiff cannot proceed with a failure to train claim when there has been no underlying constitutional violation. *Carpenter v. Gage*, 686 F.3d 644, 651 (8th Cir. 2012).

Thus, Muckenfuss's failure to present evidence to create a submissible jury question on his inadequate medical care claim is also dispositive of his failure to train claim.

### III. Conclusion

Muckenfuss has not produced any evidence of deliberate indifference by Defendants Arrington, Durham, Nunn, Parnell, Potts, Vincent, and Watson in the way they provided Muckenfuss with medical treatment for his injuries. Accordingly, Defendants are entitled to summary judgment.

IT IS THEREFORE ORDERED THAT Defendants' Motion for Summary Judgment *(Doc. 113)* be, and it is hereby, GRANTED, and Muckenfuss's inadequate medical care and failure to train claims against Defendants are DISMISSED, WITH PREJUDICE.

Dated this 21st day of December, 2017.

_____
UNITED STATES MAGISTRATE JUDGE